UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TREVOR REINHOLT, an individual,<br><br>                              Plaintiff,<br><br>     v.<br><br>SCHWAN'S HOME SERVICE, INC.,<br>a Minnesota corporation,<br><br>                              Defendant. | NO:  2:14-CV-7-RMP<br><br>ORDER GRANTING SUMMARY JUDGMENT |

Before the Court is Defendant's Motion for Summary Judgment.  ECF No. 21.  A hearing on this motion was held on November 5, 2014.  Plaintiff was represented by Darryl Parker.  Defendant was represented by Thomas McLane.

The Court has considered the motion, response, reply, all supporting documents, and the parties' oral arguments.  The Court is fully informed.

BACKGROUND

Plaintiff Trevor Reinholt was injured in the scope of his employment with Defendant Schwan's Home Service, Inc., when he was using a propane heater to defrost a truck and gas from the heater ignited.

ORDER GRANTING SUMMARY JUDGMENT ~ 1

Schwan's sells frozen food through home delivery, the food service industry, and grocery stores. ECF No. 26 at 3. Mr. Reinholt was employed by Schwan's as a material handler in the company's Spokane, Washington, warehouse from March 2005 until November 2013. ECF No. 29 at 1, 2. His primary job duties included transferring frozen food between Schwan's trucks and warehouse freezers. ECF No. 29 at 1-2.

During the last two years of Mr. Reinholt's employment at Schwan's, his supervisor was Corey Pape. ECF No. 29 at 2. Mr. Reinholt claims that Mr. Pape "consistently verbally abused and threatened [him,]" made unreasonable work demands on him, and berated him in front of other employees. ECF No. 29 at 2. Mr. Reinholt further alleges that in December 2011 he threatened to report Mr. Pape to the human resources department because of his constant bullying. ECF No. 29 at 2. Mr. Reinholt states that this threat of reporting angered Mr. Pape. ECF No. 29 at 2.

Mr. Reinholt also defrosted trucks as a Schwan's employee. *See* ECF No. 23-1 at 3-4. Mr. Reinholt explains that defrosting involves power washing a truck and allowing ice and water to drain out. ECF No. 29 at 3. On January 17, 2012, however, Mr. Pape brought a propane heater and ordered Mr. Reinholt to run the heater inside a truck and shut the doors so that the ice would melt. ECF No. 29 at 3. Mr. Reinholt refused at first and told Mr. Pape that it was dangerous and


ORDER GRANTING SUMMARY JUDGMENT ~ 2

improper to use a propane heater to defrost the trucks, but Mr. Reinholt relented because he thought that he would be fired if he did not comply with Mr. Pape's order. ECF No. 29 at 3.

Mr. Pape placed the propane heater in one truck and showed Mr. Reinholt how to set it up. ECF No. 28-1 at 8. Mr. Pape was present for at least part of the time when the first truck was being defrosted. ECF No. 28-1 at 8-9.

When Mr. Reinholt used the propane heater to defrost another truck, however, Mr. Pape was no longer at the facility. *See* ECF Nos. 23-2 at 4; 28-1 at 9. Mr. Reinholt placed the propane heater in the truck, as instructed, and shut the doors. ECF No. 29 at 3. When he later opened the truck to remove the heater, the gas ignited, throwing Mr. Reinholt backward and severely burning his face, ears, and hands. ECF No. 29 at 3-4.

Mr. Reinholt sued Schwan's, asserting claims of intentional exposure to danger, intentional infliction of emotional distress, and physical assault/battery and deliberate intention to cause injury. ECF No. 9 at 5-7. He seeks relief including lost wages, medical expenses, and attorney fees. ECF No. 9 at 8.

Schwan's moves for summary judgment, alleging that there is no evidence supporting Mr. Reinholt's theory that Schwan's deliberately intended for Mr. Reinholt to be harmed, and that his claims are barred against his employer absent such a finding of intent. ECF No. 21 at 2. The parties also dispute whether Mr. Reinholt may proceed with a separate claim that Mr. Pape's verbal abuse

ORDER GRANTING SUMMARY JUDGMENT ~ 3

constitutes intentional infliction of emotional distress. ECF Nos. 27 at 20; 32 at 9-11.

## ANALYSIS

**A.    Summary judgment standard**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party asserting the existence of an issue of material fact must show "'sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). The nonmoving party "may not rely on denials in the pleadings, but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

In deciding a motion for summary judgment, a court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31.

**B.    Deliberate intention to harm**

Washington's Industrial Insurance Act ("IIA") is the result of a "great compromise between employers and employed." *Stertz v. Indus. Ins. Comm'n of Wash.*, 91 Wash. 588, 590 (1916) *abrogated by Birklid v. Boeing Co.*, 127 Wn.2d 853 (1995). "Injured workers were given a swift, no-fault compensation system for injuries on the job. Employers were given immunity from civil suits by workers." *Birklid*, 127 Wn.2d at 859.

Employers that deliberately injure their employees, however, are not immune from suit. If an employee's injury results "from the deliberate intention of his or her employer to produce such injury," the employee has a cause of action as if the IIA never had been enacted. RCW 51.24.020.

The Washington Supreme Court narrowly interprets this exception to employer immunity. *Birklid*, 127 Wn.2d at 860. Until 1995, Washington courts had found deliberate intent under RCW 51.24.020 in only one case where the issue was disputed: when a supervisor struck an employee in the face with a pitcher during an altercation. *Id.* at 861 (discussing *Perry v. Beverage*, 121 Wash. 652 (1922)). *Birklid* marks the first time that Washington courts interpreted "deliberate intention" to reach beyond intentional physical assaults. *See id.*; *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 27 (2005).

In *Birklid*, after discussing more expansive interpretations of the term "deliberate intention," the court held that it "means the employer had actual

ORDER GRANTING SUMMARY JUDGMENT ~ 5

1   knowledge that an injury was certain to occur and willfully disregarded that

2   knowledge." 127 Wn.2d at 865.

3         The facts in *Birklid* met this limited standard. In the case, a Boeing

4   supervisor wrote to management that workers were becoming sick from the fumes

5   of a chemical resin that was being tested for later use in airplane production. *Id.* at

6   856. The supervisor predicted that the problem would become worse as

7   temperatures rose and production increased. *Id.* Apparently due to economic

8   concerns, management denied the supervisor's request for improved ventilation.

9   *See id.* When full production began, workers became ill, and the supervisor said

10  that he knew that the symptoms were reactions to working with the chemical resin.

11  *Id.*

12        Unlike prior cases, "[t]he central distinguishing fact" in *Birklid* was that the

13  employer "knew in advance its workers would become ill from the [fumes], yet put

14  the new resin into production." *Id.* at 863. The employer's alleged acts went

15  "beyond gross negligence of the employer, and involve[d] willful disregard of

16  actual knowledge by the employer of continuing injuries to employees." *Id.* The

17  court held that the workers' evidence of deliberate intention was sufficient to

18  overcome the employer's motion for summary judgment. *Id.* at 865-66.

19        In a recent case, the Washington Supreme Court reaffirmed *Birklid*'s

20  "narrow test" for deliberate intention. *Walston v. Boeing Co.*, 334 P.3d 519, 521

21  (Wash. 2014). In *Walston*, the plaintiff was diagnosed with mesothelioma years

ORDER GRANTING SUMMARY JUDGMENT ~ 6

1  after being exposed to asbestos in 1985 while working at Boeing. *Id.* at 520.

2  Boeing did not dispute that it was aware in 1985 that asbestos was a hazardous

3  material, but one of the plaintiff's experts conceded that asbestos exposure was not

4  certain to cause disease. *Id.* at 521. The court found that proof of the potential to

5  develop a disease due to asbestos exposure was not sufficient to raise an issue of

6  material fact as to whether Boeing had actual knowledge that injury was certain.

7  *See id.* at 522 ("[Asbestos exposure] does cause a *risk* of disease, but as we have

8  previously held, that is insufficient to meet the *Birklid* standard."). The court

9  remanded the case to the trial court for entry of an order granting summary

10  judgment to the employer. *Id.* at 523.

11  Here, Schwan's claims that Mr. Reinholt cannot establish that Mr. Pape

12  deliberately intended to injure him. *See* ECF No. 21 at 11. Mr. Reinholt responds

13  that Mr. Pape was "aware that using a propane heater in the manner he instructed

14  was dangerous and would inevitably cause the propane to ignite and explode, [and]

15  he fully intended to injure plaintiff and ordered him to use the heater for the

16  purpose of causing plaintiff injury." ECF No. 27 at 5. Mr. Reinholt notes that Mr.

17  Pape singled him out for the task of using the propane heater to defrost the trucks,

18  even though other workers were present. *See* ECF No. 28-1 at 7.

19  Mr. Reinholt contends that there is a genuine dispute regarding whether Mr.

20  Pape exercised "deliberate intention" under the more limited interpretation of the

21  term that existed prior to *Birklid*. *See* ECF No. 27 at 2, 15 (citing *Perry*, 121

ORDER GRANTING SUMMARY JUDGMENT ~ 7

1  Wash. 652).  In *Perry*, which was identified above as the only case prior to 1995

2  when a Washington court held that the exception for intentional injuries had been

3  met, a supervisor struck a worker in the face with an enameled water pitcher while

4  the two men were arguing.  121 Wash. at 655.  The worker was injured seriously,

5  and the evidence considered by the jury included the supervisor's admission that

6  he had "struck him with all [his] might."  *Id.* at 655, 659.  The court held that

7  "[t]he jury had a right to find that the blow was struck with a deliberate intention to

8  do injury."  *Id.* at 659.

9       Mr. Reinholt's theory of intentional injury is much more circuitous than the

10  events in *Perry*.  Rather than suffering injury in the direct course of an attack that

11  would leave no uncertainty about the potential for physical harm, Mr. Reinholt

12  relies primarily on the animosity between him and Mr. Pape to show that Mr. Pape

13  intentionally injured him by ordering him to engage in a task that Mr. Reinholt

14  characterizes as certain to cause injury.  *See* ECF No. 27 at 11-15.  This issue is

15  more appropriately considered under the *Birklid* standard.

16       However, Mr. Reinholt has not met *Birklid*'s explanation of "deliberate

17  intention," either.  Mr. Reinholt has not raised a genuine issue of fact regarding

18  whether his employer had actual knowledge that an injury was certain to occur.

19       Mr. Reinholt has not raised a legitimate dispute about whether the injury was

20  certain.  Mr. Reinholt asserts that Mr. Pape was "aware that using a propane heater

21  in the manner he instructed was dangerous and would inevitably cause the propane

ORDER GRANTING SUMMARY JUDGMENT ~ 8

to ignite and explode," ECF No. 27 at 5, but the evidence does not support his contention. In fact, Mr. Pape used a propane heater to defrost a truck before Mr. Reinholt was injured, apparently without causing any injury.[1] *See* ECF No. 28-1 at

---

[1] There is conflicting evidence regarding how often Schwan's employees at the Spokane warehouse used propane heaters to defrost trucks prior to the date of the incident. In an interview conducted on January 27, 2012, ten days after the incident, in response to a question about whether the workers "normally use the propane heaters to defrost the truck," Mr. Reinholt stated "only between November and til it warms up." ECF No. 25-1 at 5.

In a declaration filed in opposition to the motion for summary judgment, however, Mr. Reinholt explains that he was in a great deal of pain at the time of the interview and was under the influence of medication. ECF No. 29 at 4. Mr. Reinholt states that he does not recall the questions or his statements during the interview and that he believes that his medications affected his ability to provide information. ECF No. 29 at 4. Furthermore, another Spokane employee confirms that, except for this incident, he had never seen someone using a propane heater to defrost a truck. ECF No. 30 at 3.

For the purposes of summary judgment, the Court construes the evidence in the light most favorable to Mr. Reinholt and assumes that workers in Schwan's

ORDER GRANTING SUMMARY JUDGMENT ~ 9

8-9.  Moreover, Mr. Pape did not place the heater in truck from which the explosion occurred and was not present when the propane ignited, such that it would be even more difficult for him to control the "certainty" of Mr. Reinholt's injury.

Furthermore, Mr. Reinholt has offered no evidence of prior injuries that resulted from Schwan's use of propane heaters to defrost trucks, which might tend to show that Schwan's had actual knowledge that he would be injured.  Indeed, Schwan's safety manager is unaware of any portable heater accidents that occurred during truck defrosting at any other Schwan's facilities.  ECF No. 24 at 4; *see also* ECF No. 26 at 4 (Mr. Pape's statement that, "to [his] knowledge, there is no history of employees becoming injured as a result of explosions in Schwan's workplace" before this accident).  Although Mr. Reinholt argues that Schwan's "own rules specifically forbade using a propane heater in the manner Pape instructed," ECF No. 27 at 5, the referenced section of Schwan's employee handbook includes only general admonitions to operate "equipment in a safe manner at all times," without providing any specific instruction regarding defrosting trucks or using propane, *see* ECF No. 28-3.  Moreover, even if Schwan's had knowledge that injury was possible, or even substantially certain, it would be insufficient to create employer liability.  *See Vallandigham*, 154 Wn.2d

---

Spokane warehouse did not use propane heaters to defrost trucks prior to the date of the incident.

ORDER GRANTING SUMMARY JUDGMENT ~ 10

at 18 ("We reiterate that in order for an employer to act with deliberate intent, injury must be *certain*; substantial certainty is not enough.").

Mr. Reinholt's case is unlike *Birklid*, where the employer knew in advance that employees would become sick from exposure to a chemical because it had happened before. Here, instead of establishing a genuine issue of whether Mr. Pape actually knew that injury was certain to occur, the evidence shows that Mr. Pape himself used a propane heater to defrost a truck, without being injured, and that no one before Mr. Reinholt had been injured while defrosting a Schwan's truck with a propane heater. Although the practice carried some obvious risk, Mr. Reinholt has not established a genuine dispute of material fact regarding whether Schwan's had actual knowledge that injury was certain.

## C. Intentional infliction of emotional distress

The parties also dispute whether Mr. Reinholt's claim of intentional infliction of emotional distress ("outrage") may proceed. ECF Nos. 21 at 19-21; 27 at 19-21. A claim of outrage may survive the IIA's grant of employer immunity from suit if a plaintiff satisfies the separate-injury test. *See Birklid*, 127 Wn.2d at 871-72. To meet this test, injury from outrage and a workplace physical injury must (1) be of a different nature, (2) arise at different times in the employee's work history, and (3) require different causal factors. *See id.* at 869, 71-72.

To the extent that Mr. Reinholt's claim of outrage rests on injuries that he suffered due to the propane gas explosion, the claim does not pass the separate-

ORDER GRANTING SUMMARY JUDGMENT ~ 11

injury test.  The outrage injury arose from the exact same cause and at the same time as the injuries that prompted Mr. Reinholt's other tort claims.

Mr. Reinholt claims in his response to Schwan's motion for summary judgment that he also suffered a separate injury "as a result of Pape's constant bullying, and verbal and physically threatening behavior."  ECF No. 27 at 20.  Although Mr. Reinholt discussed Mr. Pape's verbal abuse in prior filings, *see, e.g.*, ECF No. 9 at 3, his response to the motion for summary judgment is the first time that Mr. Reinholt expressly claims that the verbal abuse and Mr. Pape's threatening behavior is an independent cause of injury that has "psychologically scarred [him] for life," *see* ECF No. 29 at 6.  In contrast, in response to Schwan's discovery request for "the factual basis for each and every one" of his claims, Mr. Reinholt referred to his contentious relationship with Mr. Pape only as evidence that Mr. Pape intended for him to be injured when he ordered him to defrost the truck.  ECF No. 23-3 at 12-13.

To bring a successful claim of outrage, a plaintiff must show "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of the plaintiff."  *Reid v. Pierce Cnty.*, 136 Wn.2d 195, 202 (1998) (citing *Dicomes v. State*, 113 Wn.2d 612, 630 (1989)).  The threshold to establish the first factor is very high, "mean[ing] that the conduct supporting the claim must be appallingly low."  *Robel v. Roundup Corp.*, 148 Wn. 2d 35, 51 (2002).  The conduct must be must be "*so outrageous in character, and*

ORDER GRANTING SUMMARY JUDGMENT ~ 12

1  *so extreme in degree, as to go beyond all possible bounds of decency, and to be*
2  *regarded as atrocious, and utterly intolerable in a civilized community.*" *Grimsby*
3  *v. Samson*, 85 Wn.2d 52, 59 (1975).  Whether the conduct is sufficiently
4  outrageous normally is a jury question, "but it is initially for the court to determine
5  if reasonable minds could differ on whether the conduct was sufficiently extreme
6  to result in liability." *Dicomes*, 113 Wn. 2d at 630.
7     Here, Mr. Reinholt explains that Mr. Pape "consistently verbally abused and
8  threatened [him]," made unreasonable work demands, and berated him in front of
9  other employees.  ECF No. 29 at 2.  Although there were no physical altercations
10 between the two men, Mr. Reinholt reports that he believed that Mr. Pape intended
11 to inflict physical harm on him.  ECF No. 28-1 at 3, 4.  Mr. Pape also walked
12 toward Mr. Reinholt fast, which Mr. Reinholt interpreted to be a threat.  ECF No.
13 28-1 at 3.  At the hearing, Mr. Reinholt's counsel also offered that Mr. Pape's act
14 of requiring Mr. Reinholt to use the propane heater to defrost the truck, over his
15 protests, supports the claim of outrage.
16    Viewing the evidence in the light most favorable to Mr. Reinholt, the
17 evidence provided is insufficient to withstand summary judgment.  The Court finds
18 that reasonable minds could not differ on whether Mr. Pape's conduct was so
19 extreme and outrageous as to support a viable claim of outrage.  Although Mr.
20 Pape's behavior, as described by Mr. Reinholt, was demeaning and at times even
21 threatening, the tort of outrage does not encompass such actions.  *See Grimsby*, 85

ORDER GRANTING SUMMARY JUDGMENT ~ 13

Wn.2d at 59 (liability does not exist for "'insults, indignities, threats, annoyances, petty oppressions, or other trivialities'") (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. D).

## CONCLUSION

The Court holds that Mr. Reinholt has not provided sufficient evidence to demonstrate that a genuine dispute exists as to the "deliberate intention" exception to the IIA. Mr. Reinholt also failed to establish a genuine dispute of material fact as to whether Mr. Pape's abuse at the workplace rose to the level of extreme conduct that might support a separate claim of outrage.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, **ECF No. 21**, is **GRANTED**.

The District Court Clerk is directed to enter this Order, provide copies to counsel, enter Judgment accordingly, and **close** this case.

**DATED** this 7th of November 2014.

                    *s/ Rosanna Malouf Peterson*
                ROSANNA MALOUF PETERSON
              Chief United States District Court Judge